And we'll proceed to number four, the United States v. Crisp. Ms. Jacobs. May it please the Court, good morning, Your Honors. Michelle Jacobs appearing on behalf of David Crisp. The District Court here failed to adequately address one of Mr. Crisp's principal arguments that he made in mitigation of the sentence, particularly his cooperation with law enforcement. And it's for that primary reason anyway, although I assume that we will get into the supervised release conditions issue as well, as the Court did earlier this morning. But it's primarily this first issue on which I would ask this Court to vacate the sentence and remand for resentencing. The issue, I would suggest, was clearly raised by counsel. I think it got muddled with this notion of acceptance of responsibility. When the sentencing hearing started, there was an exchange between defense counsel and the Court about this notion of whether or not he had cooperated, and it sort of morphed into this discussion about the cooperation agreement. But during defense counsel's 3553 argument, she did what she could, I would suggest, to present the issue to the Court. She indicated that he had cooperated between indictment and the change of plea, that he had spent three and a half hours in a debriefing with law enforcement, that it had been timely, that a proper, I'm not sure exactly what they call it, proper agreement or proper letter had been signed by Mr. Crisp, but ultimately that because he was being asked to waive his right to appeal, and because he was being asked to waive all rights to any challenge under 2255, he did not wish to enter this cooperation plea agreement. In other words, a plea agreement where the government presumably would indicate that in its discretion it may file a 5K1.1 motion. When the Court got to its explanation for the sentence and eventually got to the mitigation part, addressing the mitigation, it just did not touch on this issue at all. Well, didn't the sentencing judge remark on the defendant's exceptional acceptance of responsibility? He did. And wasn't it presented in that way by the defense, that he very quickly made it clear that he was going to plead and so forth and talked about it in terms of the very quick acceptance of responsibility? I think she talked about both of those things. I think she talked about the fact that he had immediately confessed and had accepted responsibility, but she also talked about the fact that he had debriefed with law enforcement. And there is a factual and legal distinction between those two things. Whether she sort of grouped them together perhaps is unfortunate as well, but the guidelines themselves under 5K1.1, there's a note in the commentary that indicates these things are different, and they are obviously different. I mean, the fact that a defendant confesses immediately is agreeable to a plea and the like is one thing, but it's different than cooperation. And the defendant here did get a below-guideline sentence, 22 months below the guideline bottom? He did. He did. However, the court indicated that there was some disagreement with the career offender provision that was causing him that and the defendant's elocution was causing him to go slightly below the guideline range. But remember that there were a couple of things I think that are significant. One, defense counsel at page 7 of the sentencing transcript indicated that there may have been a 5K1.1 motion if Mr. Crisp had entered this cooperation plea agreement. There's no dispute during the sentencing hearing by the government or now that that was the case. It's also, I think, telling that a cooperation plea agreement was offered to him. I mean, remember, he cooperates and then this plea agreement is proffered to him, which would tend to indicate that the government was at least not unhappy with his cooperation. I mean, they spent three and a half hours with him and gave him a cooperation plea agreement. I hate to say it, but at least in my experience, that would tend to indicate that they were not unhappy with his cooperation. Nonetheless, nothing was said about that factor in mitigation. Now, again, I don't stand here knowing that there would be a 5K1.1 motion filed, but everything in the sentencing record and even in the government's brief, which, again, it doesn't go so far as to say they would have filed, but they do say that we're seeking here indirectly the very thing he could have obtained by waiving his right to appeal. Listen, Mr. Crisp was looking at 262 to 327 months, and he's a career offender. I'm not here to defend his criminal record. On the other hand, he's looking at 262 months at the low end and a mandatory minimum of 10. He and his counsel understand that a 5K1.1 motion, while valuable from the government, he wasn't going to get a 3553. He wasn't going to get under that 10 years. He didn't want to waive his right to appeal. As she said in the sentencing hearing, a change in the law, an upcoming change in the law would be lost for him. And so instead, she asked the court to consider that in mitigation. And whether, as Judge Tinder, as you point out, whether it really was just the court's words, exceptional acceptance of responsibility, if that's what he was referring to, that may be. And he may say that on remand. I don't know. But acceptance of responsibility and substantial assistance or at least cooperation with law enforcement are legally and factually different things. And so I would ask that the court remand so that those further findings can be made. With the time I have remaining, I'd like to address the supervised release conditions that we've challenged, namely the complete ban on alcohol as just not being in any way tailored or justified for this defendant. The mood-altering substance, I mean, I think we all understand that that's a segal issue, and unless the court has questions about that, we would not object to the segal definition that's offered. But it should be in the defendant's current conditions. And finally, the support your defendants in meeting family responsibilities, primarily because while the government suggests in their brief that that condition is a financial one, it may be, but I'm not sure when it says support your dependents, if that's child support or if that's financial support, the meeting other family obligations I assume means something else, but I'm not here to suggest that I know what the court has in mind or even what Congress has in mind when they say other family obligations. I would suggest that this condition is more vague than almost any that we've seen in these cases. Taking your wife out to dinner on her birthday is one regard. Darn right. Absolutely. And, you know, I guess what I would say regarding these cases, I understand the court's frustration with them. I really do. But I think the districts, as I understand them, the Federal Defender Services, the U.S. Attorney's Offices, and the courts, probation departments are all working now that these cases have come down to correct this problem so that long term this will not continue to be a problem for this court. Mr. Crisp was sentenced two weeks to the day after segal. And so I was sort of interested in the Rule 35 question, Judge, that you asked earlier this morning, whether some of these could have been corrected. That 14th day was the day that segal was decided. And so in this case, I would suggest no. I mean, I wish I had come up with this argument earlier, perhaps on behalf of another defendant. None of us did. But now that we know from this court what the problems are, I think you're going to just have a period where these cases need to be corrected. And I would ask that, along with the first issue that I presented, that on remand these conditions be corrected. If the court has no further questions, I'll save any time that I have for rebuttal. Thanks. Thank you, Ms. Jacobs. Excuse me just a moment. If I may, let me start with the conditions of supervised release, which I compliment Ms. Jacobs on knowing and telling the court, advising the court, that I think every office in the district, or certainly every U.S. attorney's office, probation office, and federal defender office in Illinois is now trying to work to avoid these very problems. So I'm hopeful that these appeals will diminish pretty rapidly. I do think there may be an alternative to Rule 35A. If you look at 3583E, there's a phrase, at any time, for a modification. And there's an issue as to whether or not there could be a modification while the case was on appeal. But this would be a perfect or an ideal case for us to test that. To go back to district court, the parties agree on what the modification for mood-altering substance should be. And simply ask the district court. Unfortunately, this was Judge McCoskey, so the case would have to be reassigned. But ask for it to simply be modified and take it out of the hands of the court so you wouldn't have to worry about it. The only issue is whether or not, at any time, the case is not on appeal. I don't know the answer to that, but I understand that it's been tried successfully by the Northern District, I believe, and I'm willing to try to do that here. For the other conditions, our brief certainly, I think, supports and the record supports the ban on alcohol. Unfortunately, Mr. Crisp clearly has an addiction substance abuse problem. I don't think that it's limited to just controlled substances. In addition, there's an issue of how he should handle himself once he's on supervised release. And clearly, he needs to get a job, needs to support his family, needs to do his various other things. And if he's getting intoxicated four times a week, that probably is counterproductive to success on supervised release. So I think the record supports that condition pretty soundly. Let me go back to the cooperation. Oh, no, incidentally, I'm sorry. On the support your dependents and meet other family obligations, this record is a terrific record for a conclusion about that. Because this is the case in which the man said that he started dealing drugs again because he couldn't afford diapers and formula for his baby. Well, that's what meet other family obligations means. He had to buy diapers and formula for the baby, right? I don't think there's any confusion about that, and most people would understand that. So I think that if you get into the weeds on this definition of family responsibilities, I don't think you have to slice that any further than what the words are now. I mean, it's just that people apply the ordinary meaning and understanding that, in addition to Judge Bower's suggestion, it simply means to provide for your children, satisfy their financial needs. Okay, unless there are questions about this condition of supervisory, let's go on. Let's talk about this cooperation. I think you will see in the sentencing transcript, the defense counsel mentions about three times that the government is not under any obligation. The government will not be filing a 5K1. And she explains why that is. It's because the defendant entered into a cooperation agreement, which she then says, which was not actually performed. That's on page 13 of the defendant's appendix. And she says he didn't enter into a cooperation plea agreement. Well, the government's not inclined to give credit for partial cooperation. If we're going to give credit for somebody cooperating, you've got to pledge to cooperate. They've got to agree to be willing to testify before a grand jury or a trial or whoever it is that they have information about. You don't come in and just make a proffer to the government and think, okay, I'm finished with it. I no longer want to cooperate. I think you're going to get a 5K motion. That was clearly understood at the district court level, I think, by defense counsel. They didn't comply with all the rest of the agreement by entering that binding plea agreement. The government did make the 3E1.1B motion for the third level of acceptance of responsibility. Is that correct? Absolutely. Yes. I hope the record, well, it's abundantly clear that isn't this the case in which the guy pled guilty within a short period of time? Correct. He promptly pled guilty. It was like three months after the indictment was filed. Gave it up as soon as he was arrested. Gave a proffer. You have a question which looks Do I have a follow-up? No, I just wanted to confirm that you didn't make that motion. Yeah. Well, clearly he got a sentence below the guideline range in large part, I think, because of his extraordinary acceptance of responsibility. Now, the problem with Ms. Jacobs' argument, which she recognizes, is what she referred to as perhaps unfortunate remarks by defense counsel, which the judge could clearly understand to be focused on generally this cooperative acceptance of responsibility. Again, if you refer to the sentencing transcript, you'll see that defense counsel conflated the two, trying to get the greatest benefit out of this. The judge recognized it as extraordinary acceptance of responsibility and gave the defendant some benefit for that. I think that's as far as it goes. I want to finish by making one admission of error on my part, which is the statement in the government's brief where it says, the irony of this appeal is that Mr. Cripps seeks on appeal the very thing he could have obtained by waiving appeal. That's a government's motion for variance. There are two words that are missing from that sentence. It's the very thing he claims he could have obtained by waiving appeal. The record doesn't necessarily support that he's going to get any kind of 5K1 simply because, or, better yet, I'm going to interrupt myself and tell you, or that the real reason that he didn't want to sign that agreement was because he didn't want to waive appeal. I would think that the court would view this, what I recall as irony, as really Mr. Cripps being what you would call in literature an unreliable narrator. You know, when your kids run up to you and say, Mom said we have ice cream as long as we don't ask you any questions. And you say, okay, well, you must have some pretty pressing questions to give up ice cream like that. What's your question? And the kids say, can we have ice cream? You immediately question what the actual circumstances might be, and I think that's the, I'm hoping there's some skepticism about the claim that Mr. Cripps says that he could have gotten a variance or a motion for variance simply by waiving appeal. There's a lot more potentially going on here, and I think defense counsel referred to it in saying essentially he declined to continue to cooperate. I sense there are no further questions, and perhaps I talked too long, so I'll remain with my time. Thank you very much. Thank you, Mr. Hartford. Ms. Jacobs. I just have two real quick points. The first being the cooperation. I just don't want there to be any misunderstanding. I'm not suggesting that he would or would not have necessarily gotten a 5K1.1 motion. What I'm suggesting is the district court passed over it in silence, and I would ask that because it is a legitimate argument in mitigation, regardless of whether there's a 5K1.1 motion, that the district court be required to at least acknowledge it or comment on it. Secondly, with respect to the supervised release condition on support your dependents, if this really is just a financial condition, as the government is suggesting, whether it's the buy diapers or pay your child support or whatever, it sure seems to me to be pretty broad and at the whim of a particular probation officer. Are you supposed to buy diapers? Are you supposed to buy formula? And more troubling, and I think as the court has recognized in both Siegel and Baker and the other cases, what happens if he can't? This man is going to spend 20 years in prison. If he does not buy diapers or if he does not buy formula or if he cannot pay his child support, the question is should the condition explicitly indicate some ramifications or what's the result of that? And that's what this court has said in these cases, and given the sort of broad and open-ended nature of this condition, he runs the real risk. Well, Ms. Jacobs, would a special condition be acceptable that if at the time of release from custody, not, you know, from prison, if you had minor children responsible for their financial support, would that be sufficient and, you know, limiting? I think there should be some limiting factor that includes the defendant's ability to pay. I mean, that's really the biggest concern is this says, do it, support your dependents. If he gets out of prison and can't,  there's got to be some indication of what happens to him then. So what if we place a line in there if financially able? I mean, I think that would be a lot fairer, at least that there's some financial assessment of his ability to pay. Well, again, with the financial assessment at the point of the special condition, right? No, that's right. It just projects ahead, I guess. That's right. But given that I think that there's an article in Siegel that's cited that up to a third of defendants are now being revoked and going back to prison, something's got to be done. And to the extent that we can give them more explicit guidance or a more narrow set of conditions that they can meet so that there is success going forward. Are they going back on these types of conditions or are they going back on the don't violate federal state laws? I think what that article seemed to say is both, and that is oftentimes what you'll see is technical violations being used to revoke. That doesn't mean they're always only technical violations. Judge, you indicated you were a district court judge. You know oftentimes it's much easier to agree on the technical violation, but because there's some underlying violation, there is a prison sentence. So I can't say that it's all of these, but certainly these kinds of conditions are being used to revoke defendants. Is that article cited in your brief? It's not. It's within the Siegel case that it's cited. The author's name is Rowland. Thank you. Thank you. Thank you. Thank you, Ms. Jacobs. Mr. Hartzer? Oh, no. You're ready to go again, but not until we give Mr. Hillis another chance. All right. We take this case under advisement. That is the United States v. Chris and move on.